UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| PAUL HELLER, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| VIPSHOP HOLDINGS LIMITED, YA SHEN, and DONGHAO YANG, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Paul Heller ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Vipshop Holdings Limited, ("Vipshop" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Vipshop securities between February 17, 2015 and May 11, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.       Defendant Vipshop Holdings Limited, through its subsidiaries, operates as an online discount retailer for various brands in the People's Republic of China. It offers a range of branded products, including women's apparel, such as casual wear, jeans, dresses, outerwear, swimsuits, lingerie, pajamas, and maternity clothes; men's apparel comprising casual and smart-casual T-shirts, polo shirts, jackets, pants, and underwear; women and men shoes for casual and formal occasions; and accessories consisting of belts, jewelry, watches, and glasses for women and men.

3.       The Company provides its branded products through its vipshop.com, vip.com, and lefeng.com websites, as well as through its cellular phone application. Vipshop Holdings Limited was founded in 2008, is headquartered in Guangzhou, the People's Republic of China, and its shares trades on the NYSE under the ticker symbol "VIPS".

4.       Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) Vipshop has manipulated and overstated sales, receivables, profit, cash flows, and asset accounts including inventory and investments; (2) Vipshop's financial statements contain GAAP

2

violations by reporting revenue on a 'gross' basis, despite the fact that the vast majority of the company's sales are under a consignment arrangement; (3) Vipshop's internal controls over financial reporting were ineffective; and (4) as a result of the foregoing, Vipshop's public statements were materially false and misleading at all relevant times.

5.      On May 12, 2015, Mithra Forensic Research published a report on Vipshop (the "Mithra Report") asserting, among other things, that: (1) forensic models suggest Vipshop manipulated sales, receivables, profit and other asset accounts; and (2) Vipshop's financial statements have been contradicted by management's own disclosures in several instances. The Mithra report stated, in part:

> *Vipshop reports its revenue on a gross basis, yet VIPS management freely admits that VIPS acts primarily as a consignee. Consignees primarily report on a net basis-as agents.*
>
> *               ∗               ∗               ∗*
>
> VIPS' revenue recognition policy highlights those elements of its business which it believes are more indicative of principal activity and which would suggest reporting revenues on a gross basis.
>
> **However, Management freely admits that it operates as a consignee and has no intentions of becoming a principal.**
>
> *               ∗               ∗               ∗*
>
> *Management's statements about purchased inventory seems to be contradicted by its own financial statements; VIPS, in violation of GAAP, seems to be reporting some inventory-held-on-consignment as owned inventory, resulting in uplifts of reported gross profit of $75M and $151M in 2013 and 2014 respectively.*

6.      As a result of this news, shares of Vipshop fell $1.54 per share or over 5% to close at $25.78 per share May 12, 2015.

7.      On May 14, 2015, during the Company's earnings conference call, it was revealed that Vipshop was the subject of another shortseller report issued by J Capital Research (the "J Capital Report"). According to an article published later that day by *TheStreet.com*, the J Capital

Report presented research "Citing discrepancies in the company's accounting" and stating that the Company's "financial filings in China are vastly different than the filings with the Securities and Exchange Commission, leading to concerns that the company's results are not accurate."

8.      As a result of this news, shares of Vipshop fell $1.45 per share, or over 5.4%, to close at $25.21 per share May 14, 2015.

9.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Vipshop is headquartered in this District and a significant portion of Defendants' actions, and the subsequent damages, took place within this District.

13.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

4

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Vipshop securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Vipshop is a Cayman Islands corporation with its principal executive offices located at No. 20 Huahai Street, Liwan District, Guangzhou 510370, People's Republic of China. Vipshop's common stock trades on the NYSE under the ticker symbol "VIPS."

16.     Defendant Ya Shen ("Shen ") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

17.     Defendant Donghao Yang ("Yang ") has served at all relevant as the Company's Chief Financial Officer ("CFO").

18.     The defendants referenced above in ¶¶ 15 - 17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Defendant Vipshop Holdings Limited, through its subsidiaries, operates as an online discount retailer for various brands in the People's Republic of China. The Company provides its branded products through its vipshop.com, vip.com, and lefeng.com websites, as well as through its cellular phone application. Vipshop Holdings Limited was founded in 2008, is headquartered in Guangzhou, the People's Republic of China, and its shares trades on the NYSE under the ticker symbol "VIPS".

5

## Materially False and Misleading
## Statements Issued During the Period

20.     On February 16, 2015, after the close of trading, the Company issued a press

release and the next day filed a Form 6-K with the SEC, announcing its financial and operating

results for the fourth quarter and full year ended December 31, 2014. For the fourth quarter, the

Company announced net income of $56.6 million, or $0.47 per share on a diluted basis, on

revenue of $1.36 billion, compared to a net loss of $25.4 million, or $0.22 per share on a diluted

basis, on revenue of $651 million for same period in the prior year. For the full year, the

Company reported net income of $52.3 million, or $0.45 per diluted share, on revenue of $1.7

billion, compared to a net loss of $9.5 million, or $0.11 per diluted share, on revenue of $692

million for the prior year.

21.     In the press release, the Company stated:

> Mr. Eric Shen, chairman and chief executive officer of Vipshop, stated, "We are
> very pleased with our robust fourth quarter and full year 2014 financial and
> operational results, which were largely driven by our continued efforts in
> enhancing our mobile shopping experience. As mobile is increasingly becoming
> the ideal solution for eCommerce users, we believe our flash sales model, which
> allows shoppers to act instantly on sales events anytime and anywhere, is
> particularly well suited for users shopping via mobile devices. Additionally, we
> have witnessed our initiatives in logistics expansion and warehousing efficiency
> take shape as we progressed in terms of both customer satisfaction and cost
> control. Going forward, we will continue to strengthen our mobile capabilities and
> focus on attracting new customers by continuing to provide a convenient and
> pleasant shopping experience."

22.     On February 24, 2015, the Company filed an annual report on Form 20-F with the

SEC which was signed by Defendant Shen, and reiterated the Company's previously announced

quarterly and fiscal year-end financial results and financial position. In addition, the 20-F

contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by

Defendants Shen and Yang, stating that the financial information contained in the Form 20-F

was accurate and disclosed any material changes to the Company's internal control over
financial reporting.

23.     The statements referenced in ¶¶ 20-22 above were materially false and/or
misleading because they misrepresented and failed to disclose the following adverse facts, which
were known to defendants or recklessly disregarded by them, including that: (1) Vipshop has
manipulated and overstated sales, receivables, profit, cash flows, and asset accounts including
inventory and investments; (2) Vipshop's financial statements contain GAAP violations by
reporting revenue on a 'gross' basis, despite the fact that the vast majority of the company's sales
are under a consignment arrangement; (3) Vipshop's internal controls over financial reporting
were ineffective; and (4) as a result of the foregoing, Vipshop's public statements were
materially false and misleading at all relevant times.

## The Truth Emerges

24.     On May 12, 2015, Mithra Forensic Research published a report on Vipshop (the
"Mithra Report") asserting, among other things, that: (1) forensic models suggest Vipshop
manipulated sales, receivables, profit and other asset accounts; and (2) Vipshop's financial
statements have been contradicted by management's own disclosures in several instances. The
Mithra report stated, in part:

> Depending upon the nature of its sales transactions, VIPS acts as either a principal
> or an agent. VIPS reports that for the vast majority of its sales, it reports on a
> gross revenue basis, essentially as a principal. If the M-score is correct in flagging
> anomalies with VIPS' sales and receivables growth, it is likely that VIPS used its
> dual revenue reporting ability to its advantage. VIPS could have recorded cash
> proceeds from RPTs as gross profit. VIPS could then back into inflated revenue
> and costs of sales figures. Based upon our research, we believe that VIPS has
> overspent on various initiatives totaling $573M, and that these funds were likely
> recorded as gross profit. In fact, if VIPS had accounted for these funds as gross
> profit, almost 98% of the growth in gross profit from 2013 to 2014 can be
> attributed to the overspends.

\*     \*     \*

*Vipshop reports its revenue on a gross basis, yet VIPS management freely admits that VIPS acts primarily as a consignee. Consignees primarily report on a net basis-as agents.*

\*        \*        \*

VIPS' revenue recognition policy highlights those elements of its business which it believes are more indicative of principal activity and which would suggest reporting revenues on a gross basis.

**However, Management freely admits that it operates as a consignee and has no intentions of becoming a principal.**

In response to an analyst's question on the 4Q 2013 earnings call, Donghao Yang provides the clearest evidence yet that VIPS is fully aware that it is violating GAAP guidance on gross revenue reporting:

> John Choi - Daiwa: Good evening guys. Congratulations on a great quarter and thanks again for taking my question. I have two questions. My first question is regarding the business model, right now, Vipshop obviously moved majority of the products is more or less through a consignment business model, but that didn't have any plans to extend on I guess, it's kind of a follow-on question for the first time one of the questions before, but have any plans to become more doing more principal owners of the inventory like more of a traditional B2C products by offering more diverged products to the customers at a more reasonable price, but on the other hand, we will also have to bear the inventory risk? (...)

> Donghao Yang - Chief Financial Officer: Let me take this one. Thank you for coming to the call. Our business model now you are right we don't take - we don't purchase the inventory upfront, which enables us to use very little working capital to support such a faster top line growth. And going forward, I don't think that we are going to increase the amount of inventory that we purchased at the current level. So meaning we don't want to become the principal owner of the inventory unless we have to. For example, currently, about 10% of the inventory in a warehouse has to be purchased from the supplier. And understandably if those suppliers are big suppliers like Nike, but going forward as we become bigger with greater marketing power, we believe that more and more suppliers will allow us to take their inventory without having to purchase upfront.

Similarly, a report by BNP Paribas cites the uniqueness of the VIPS consignment model:

To the best of our knowledge Vipshop is one of the very few B2C e-commerce companies in China, as well as globally, that operates on a consignment model -afforded by Vipshop's unique and leading position as a preferred inventory clearing solution for brands. Approximately 10% of Vipshop's inventory is purchased from suppliers, which are usually stronger brands such as Nike and Adidas. For the sale of the remaining 90% of inventory, Vipshop gets paid by the customer almost immediately, while it typically pays the supplier in 1-1.5 months following the sale. As a result Vipshop bears minimal inventory risk.

**Elsewhere in VIPS' financial disclosures, the company describes it business model which seems very much akin to a consignment model, and which would argue for net revenue accounting.**

Summary-level details about VIPS' business model are as follows:

- VIPS sells out-of-season excess inventory of branded-goods;
- the company has over 7,000 suppliers;
- VIPS pays upfront for no more than 10% of the products in its warehouses;
- VIPS undertakes best efforts to sell products to end-customers via a week-long flash sales format;
- customers pay in advance or cash-on-delivery;
- customers have a 7-day window in which they can return products for a refund;
- in the vast majority of cases, VIPS has the right to return any unsold product to suppliers; and
- VIPS pays the suppliers in installments and does not transmit final payment until 1 to 1.5 months after goods have been sold to end-users.
- The VIPS business model, as described, is clearly that of a consignee company:
- merchandise is forwarded by the consignor to the consignee to be sold at a profit;
- the consignee pays a small deposit for the goods transferred to its warehouses;
- however, ownership of the merchandise remains with the consignor and hence is not be reported on the financial statements of the consignee;
- the risks and rewards of ownership remain with the consignor, particularly inventory loss and credit risk;

9

- unsold merchandise is returned to the consignor; and
- the consignee is paid a commission as a percentage of merchandise value sold and deducts his commission from the proceeds of any sales.
- By definition, consignment arrangements are established between principals (consignors) and agents (consignees). As an agent, the consignee should report revenue on a net basis.

**An assessment of the key determinants for gross reporting, reveals that VIPS fails on most characteristics.**

We also examined guidance from FASB, as disclosed online, and concluded that VIPS fails GAAP against most of the key determinants for gross reporting.

\*     \*     \*

*Management's statements about purchased inventory seems to be contradicted by its own financial statements; VIPS, in violation of GAAP, seems to be reporting some inventory-held-on-consignment as owned inventory, resulting in uplifts of reported gross profit of $75M and $151M in 2013 and 2014 respectively.*

25.     As a result of this news, shares of Vipshop fell $1.54 per share, or over 5%, to close at $25.78 per share May 12, 2015.

26.     On May 14, 2015, during the Company's earnings conference call, it was revealed that Vipshop was the subject of another shortseller report issued by J Capital Research (the "J Capital Report"). According to an article published later that day by *TheStreet.com*, the J Capital Report presented research "Citing discrepancies in the company's accounting" and stating that the Company's "financial filings in China are vastly different than the filings with the Securities and Exchange Commission, leading to concerns that the company's results are not accurate."

27.     As a result of this news, shares of Vipshop fell $1.45 per share or over 5.4%, to close at $25.21 per share May 14, 2015.

28.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Vipshop securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.    Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

30.      The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Vipshop securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Vipshop or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.      Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

32.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Vipshop;

- whether the Individual Defendants caused Vipshop to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Vipshop securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

12

- Vipshop securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Vipshop securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

36.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

37.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the

other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vipshop securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Vipshop securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

41.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Vipshop securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Vipshop's finances and business prospects.

42.     By virtue of their positions at Vipshop, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants

14

were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

43.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Vipshop securities from their personal portfolios.

44.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Vipshop, the Individual Defendants had knowledge of the details of Vipshop's internal affairs.

45.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Vipshop. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Vipshop's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Vipshop securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Vipshop's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Vipshop securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

46.     During the Class Period, Vipshop securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Vipshop securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Vipshop securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Vipshop securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

47.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

48.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     During the Class Period, the Individual Defendants participated in the operation and management of Vipshop, and conducted and participated, directly and indirectly, in the conduct of Vipshop's business affairs. Because of their senior positions, they knew the adverse non-public information about Vipshop's misstatement of income and expenses and false financial statements.

51.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Vipshop's financial condition and results of operations, and to correct promptly any public statements issued by Vipshop which had become materially false or misleading.

52.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Vipshop disseminated in the marketplace during the Class Period concerning Vipshop's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Vipshop to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Vipshop within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Vipshop securities.

17

53.     Each of the Individual Defendants, therefore, acted as a controlling person of Vipshop. By reason of their senior management positions and/or being directors of Vipshop, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Vipshop to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Vipshop and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

54.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Vipshop.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 19, 2015

Respectfully submitted,

**POMERANTZ LLP**

Jeremy A. Lieberman
C. Dov Berger
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email:  jalieberman@pomlaw.com
          cdberger@pomlaw.com

*Attorneys for Plaintiff*

19

### CERTIFICATION PURSUANT
### TO FEDERAL SECURITIES LAWS

1. I, _Paul Holler_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Vipshop Holding Limited ("Vipshop" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Vipshop securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Vipshop securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Vipshop securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed  *May 15, 2015*
           (Date)

*Paul Heller*
           (Signature)

*Paul Heller*
           (Type or Print Name)

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|------|------------------|------------------|-----------------|
| 3-20-15 | Purchase | 900 | $28.35 |
| 4-29-15 | Purchase | 50 | $28.526 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |